FOURNET, Chief Justice.
The plaintiff, A. A. Thompson, claiming to be the owner of a one-sixth interest in a tract of land[1] purchased July IS, 1929, in indivisión with his two sisters and three brothers[2] — and alleging their ¡Hjths interest was purchased by W. L. Walker July 14, 1943, for $2,150 at a foreclosure sale instigated by the Ruston State Bank & Trust Company, to whom the property had been mortgaged to secure the $916.03 borrowed by the brothers and sisters to pay their share of the purchase price, Walker, three days later, securing from the bank whatever interest it acquired on December 10, 1932, when the property was purportedly sold for taxes, which sale was null and void, being in violation of Act 170 of 1898, and particularly Sections 50 and 51, as amended, in that notice of delinquency of taxes and demand for payment was never served on some of the brothers and sisters [3] *66 who were record owners of an interest in the property — instituted this suit for a partition of the property by licitation, joining as parties defendant the Ruston State Bank & Trust Company, W. L. Walker, Joe B. Richards, holder of a lease covering 50 acres of the property given by Walker, as well as his sister Ola Thompson, his brothers C. R. and J. C. Thompson, the divorced wife of G. T. Thompson, and the heirs of his deceased sister, Mrs. Dulcie Thompson Arrant.
To this petition the defendant Walker filed a plea of peremption under the provisions of Section 11 of Article X of the Louisiana Constitution of 1921, as amended,[4] since, when the suit was filed on December 7, 1950, more than five years had elapsed from the recordation on December 12, 1932, of the deed secured by the bank at the tax sale.[5]
To this exception the plaintiff filed an amended petition and a plea of estoppel in which it is asserted, in substance, that Walker is without right to urge the per-emption of five years to the tax title purportedly acquired by the bank in 1932 since (1) the bank recognized throughout that its officers and employees acted solely as agents of the tax debtors in buying the property at the tax sale, as evidenced by the fact (a) the money paid by the bank at the tax sale was derived from the Thompsons, (b) they remained in possession of the property for ten years thereafter, or until the foreclosure by the bank and the purchase by Walker at the foreclosure sale; (c) the property during these years continued to be assessed in the name of J. C. Thompson et al., as formerly, and (d) the bank continued to pay the taxes and to liquidate the debt from the revenues under its agreement with the Thoihpsons; [6] (2) the bank was thus not only estopped to deny the tax deed was a nullity, but, by the institution of the foreclosure proceedings ten years later, judicially admitted and acknowledged it did not claim title to the property thereunder; (3) Walker knew all of these facts when he purchased only the %ths interest mortgaged to the bank at the foreclosure sale for he thereafter sought to acquire the plaintiff’s i/£th interest, and, even if he did not, he is estopped to deny the bank did not acquire title to the property at the tax sale since he is bound by the bank’s judicial admission that the Thompsons remained owners of the property despite the tax sale, otherwise the foreclosure would have been unnecessary; and, finally, (4) he was fully advised of all of these facts by the bank before it executed the document of July 17, 1943, conveying to him whatever interest it had in the property and he did not thereby, acquire any greater interest or better title than the bank, *67 particularly since the document was not only impressed with the bank’s official judicial admission of ownership in the Thompsons, but was conveyed without consideration and without warranty of title.
The case was tried on defendant’s plea of peremption, which was maintained, and the plaintiff has appealed
As pointed out in our original opinion, if there was a failure to give the tax debtors notice of the delinquency and to demand payment of the taxes as required by law, this was an irregularity cured by the five year peremptive period. However, we think that under the facts of this case it is clear the bank never claimed any interest in or title to the property under the tax deed of December 10, 1932, and that it did not, in fact, either vest or intend to vest the said tax title in Walker by its execution of the document of July 17, 1943.
The record shows that the bank charged the cost of purchasing the property at the tax sale to the Thompsons, as reflected by the bank statement headed “Tax Subrogation Account, J. C. Thompson, et ah,” wherein, on the day prior to the tax sale, the Thompson account was debited for $76.95, the exact amount of delinquent taxes due for the year 1931, plus fees and penalties. The account further reflects the bank thereafter continued to charge to the Thompsons the taxes and expenses paid by it in succeeding years, the bank, according to the sworn statement of its cashier, having “recovered all of the money which they (it) paid out for taxes.” During all of these years the bank treated the property at all times as belonging to the Thompsons, even accounting to the plaintiff for a sixth of the amount realized from the sale of timber on the property after deducting his proportionate share of the taxes for the years 1935 and 1936.
From the foregoing it would appear the bank purchased the property at the tax sale for the Thompsons, never intending to acquire title itself, but only to protect its mortgage covering the ^ths interest therein. By foreclosing on this mortgage ten years later, the bank not only judicially admitted it was without title to the property, but that its only interest therein was as the holder of the mortgage being foreclosed. Consequently, Walker, as the purchaser at the foreclosure sale, is bound by this judicial admission and cannot now be heard to question the ownership of the seized debtors in and to the property. It necessarily follows that the instrument of July 17, 1943, executed three days later without consideration and without warranty of title, conveyed to Walker only such interest as the bank had after a full disclosure of the facts.[7]
We therefore conclude the trial judge erroneously maintained the plea of peremption and dismissed the suit.
For the reasons assigned, the judgment appealed from is annulled and set aside, the plea of peremption is overruled, and the case is remanded to the Third Judicial District Court, in and for the Parish of Lincoln, for further consideration consistent with the views herein expressed, and in accordance with law. All costs of this appeal are to be borne by the defendant W. L. Walker.

. This tract contains some 227 and 1/2 acres, and is described as lying in the SW/4 of the SW/4 of Section 16, the E/2 of the NE/4 and the NW/4 of the NE/4 of Section 20, and the W/2 of the NW/4, and the NW/4 of Section 21, T. 18 N., B. S W., Lincoln Parish.

. The sisters are Ola Thompson and Mrs. Dulcie Thompson Arrant. The latter having died, her children as heirs were joined as parties defendant. The brothers are C. B., J. C., and G. T. Thompson. G. T. Thompson died without children, his brothers and sisters, or their descendants, inheriting his community interest in the property, the other half vesting in his wife at the time of their divorce. The former wife was joined as a party defendant.

.The allegations are that no notice or demand was sent to “Ola Thompson, Dul-cie Thompson Arrant, G. B. Thompson, *66 G. T. Thompson, and A. A. Thompson.” Inasmuch as the property was assessed in the name of J. O. Thompson et al., from 1931 through 1942, it would appear notice was sent to him, and for this reason his name is not included in the allegations.

.This provision is quite long, but the pertinent portion reads: “No sale of property for taxes shall be set aside for any cause, except on proof of payment of taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and ’ within five years from the date of the recordation of the tax deed, if no notice is given.”

. An answer was filed by one of the other defendants, which is a general admission, but the case was tried on the plea of es-toppel filed to the peremptive plea, and the answer, therefore, was not taken into consideration.

. It is alleged that under an agreement the Thompson brothers and sister’s had with the bank at the time they borrowed the purchase money and gave the mortgage, of which plaintiff knew, O. R. Thompson was to manage the property, turn over the revenues to the bank: the bank, in turn, was to pay the taxes and expenses, and account direct to the plaintiff for his l/6th share of the remaining revenues, the balance then to be applied by the bank toward the liquidation of the indebtedness.

. The instrument of July 17, 1943, recites that the bank, as owner of an act of mortgage operating upon and affecting the property, bought it at a tax sale on December 10, 1932, and thereafter foreclosed on its mortgage, W. L. Walker purchasing the mortgaged interest at the foreclosure sale for $2,150, and the bank, therefore, by the instrument, conveyed to Walker “all of its right, title and interest in and to the said described tract of land.”